(15 Misc. Rep. 15.)

### MOSES v. CITY OF KEY WEST.

(Superior Court of New York City, General Term. December 18, 1895.)

MUNICIPAL CORPORATIONS—EXPENDITURE OF SPECIAL FUND—DISCRETION OF OFFICERS.

Plaintiff contracted to purchase certain bonds of defendant city, to be issued from time to time, the proceeds to be used to "inaugurate a perfect system of surface drainage and underground sewerage" for the city. *Held,* that he was not justified in refusing to accept the second issue of such bonds on the ground that the proceeds of the first had been used for

curbing, grading, and paving streets; such use being within the general scope of the legislative act, and the manner of carrying out the provisions of the act within the discretion of the city authorities.

Appeal from jury term.

Action by Morris Moses against the city of Key West to recover broker's commissions. The complaint was dismissed, and plaintiff appeals. Affirmed.

The complaint alleges that defendant is a municipal corporation incorporated by and existing under chapter 3966 of the Laws of Florida; that on the 20th day of March, 1890, one B. G. Oppenheim, plaintiff's assignor, entered into a contract in writing with defendant, whereby defendant agreed to issue bonds to the extent of $400,000, and to use the proceeds "for the purpose of inaugurating a perfect system of surface drainage and underground sewerage throughout the city of Key West"; that Oppenheim agreed to receive the bonds "from time to time as the board of commissioners of defendant should require"; that on the 12th day of June, 1890, the board drew on Oppenheim for $97,500, the sum he had agreed to pay for each $100,000 of the bonds; the draft was paid, and the money deposited to defendant's credit; that defendant "has already paid, laid out, and expended large amounts of the money already paid to it by said Oppenheim for curbing, grading, and paving 'the streets of said city," and "has contracted for and made arrangements to use the entire sum of $400,000 aforesaid"; that by reason of the use made by defendant of the moneys it has received, and because of an alleged violation by defendant of its agreement with Oppenheim, it has become impossible for him to receive the other $300,000 of the bonds, and the bonds purchased and taken by him have become less marketable, and have been rendered an unprofitable investment and an insecure security for the money so paid for them; that by the terms of the agreement it was provided that, if defendant should not prepare the bonds, or should decide not to negotiate them, or should neglect to perform its part without any fault on the part of Oppenheim, then and in that case defendant should pay to him a sum equal to the commission of 2.4 per cent., "which, if not for the default of said defendant, said Oppenheim would otherwise have earned under said agreement"; that defendant has failed and neglected to perform the conditions of the agreement on its part, which neglect "has not been caused, superinduced, or brought about in any way by the fault of said Oppenheim"; that, by reason of the premises, defendant became indebted to Oppenheim in the sum of $7,200; that before the commencement of this action Oppenheim, in writing, assigned to plaintiff all his rights, title, and interest in and to that sum, for which, with interest from June 13, 1891, judgment is demanded. The amended answer admits that defendant is a municipal corporation under chapter 3966 of the Laws of Florida, and alleges that whatever defendant did in the matters referred to in the complaint was lawfully done; admits a contract in writing with Oppenheim, March 20, 1890, but denies all the allegations of the complaint as to the terms of that contract; alleges that whatever Oppenheim did in the matter of the block of bonds he purchased and paid for was in part performance of his said agreement; denies that defendant has used any of the moneys, proceeds of bonds, unlawfully or in violation of agreement with Oppenheim or with any one else, and denies that defendant has made any arrangement or entered into any agreement for the use of the entire sum, or any part of the sum, of $400,000, "contrary to the stipulations, or any of them, of defendant in said contract in writing of March 20, 1890, between said Oppenheim and defendant, or in disregard of the terms or provisions of the law or laws of the state of Florida in said contract mentioned or referred to," and denies each and every other allegation of the complaint. The amended answer further alleges a counterclaim in the amount of defendant's damages because of Oppenheim's failure to accept and pay for the second block of $100,000 of bonds, tendered March 2, 1891, in the city of New York, under the terms of his said contract. The reply denies the allegations of the counterclaim.

Argued before McADAM and GILDERSLEEVE, JJ.

W. F. Randel, for plaintiff.
B. N. Harrison, for defendant.

PER CURIAM.    This action was brought to recover the sum of
$7,200, the amount of commissions alleged to be due to plaintiff's
assignor under a certain agreement for the purchase of bonds that
said assignor, one B. H. Oppenheim, had entered into with defendant.
The appeal before us is by the plaintiff from a judgment entered at
trial term dismissing the complaint.    At the close of plaintiff's case,
in granting the motion of the defendant that the complaint be dis-
missed, the learned trial judge delivered the following opinion:

"To recover in this action, the burden of proof is upon the plaintiff to estab-
lish such a breach of the contract on the part of defendant as would entitle
Mr. Oppenheim to recover his whole commission on the whole issue of bonds
to the amount of $400,000. The defendant did not decide not to negotiate
the balance of the bonds, and it did not fail to cause them to be prepared;
but, on the contrary, the second series of $100,000 of bonds were prepared
and tendered to Mr. Oppenheim for negotiation, and were refused by him.
Unless Mr. Oppenheim was justified, under the contract, in refusing them,
and refusing to go any further, this constituted a breach of the contract on
his part, and released the defendant from any further obligation under the
contract. The whole case, therefore, turns upon the question whether Op-
penheim was justified in his refusal. It is claimed that he was justified by
reason of the alleged fact that the proceeds of the first series of bonds had
not been expended strictly for the purposes for which the defendant was
bound to expend them; but the evidence, in my judgment, does not establish
the claim. Mr. Oppenheim, under his contract, had no right to control the
manner or the order in which the work was to be prosecuted. As long as the
expenditures were incurred for work within the general scope of the act of
1889, or for work preliminary to the inauguration of the system, or any part
thereof, contemplated by the act of 1889, it was sufficient. If the application
of the proceeds of the bonds can be questioned at all,—as to which there may
be a strong doubt,—the authorities of the city of Key West necessarily ought
to have a large discretion in directing all preliminary measures, and in the
manner and the order of the prosecution of the general plan authorized by
the act of 1889, and Mr. Oppenheim could not control the exercise of that
discretion. The resolution referred to by the plaintiff's counsel is not of itself
a breach of the contract. Under all the facts as they appear, the motion to
dismiss must be granted. There being no dispute as to the facts, there can
be nothing to submit to the jury."

A careful examination of the evidence does not disclose any dis-
pute as to the facts.    Assuming all the testimony offered by plaintiff
to be true, and adopting the inferences most favorable to him, we are
of the opinion that he had failed to establish a cause of action.    We
concur in the conclusion of fact reached by the learned trial judge
and with the principles of law applied to the case.    The record is
free from error.    The judgment is right, and should be affirmed,
with costs to the respondent.